OPINION OF THE COURT
Daniel J. Sullivan, J.
This is a motion by the defendant Nizza to dismiss a prosecutor’s information charging him with the class B misdemeanor of leaving the scene of an accident (Vehicle and Traffic Law, § 600) on the ground that he has been deprived of *75 his right to a speedy trial. The application is predicated on statutory law fixing arbitrary time periods — measured from the commencement of the criminal action — in which the prosecution must try an accused or suffer dismissal of the case (CPL 170.30, subd 1, par [e]; 30.30). Thus, the defendant has opted not to make any "speedy trial” claims under the Federal or State Constitutions (see People v Singer, 44 NY2d 241, 251-255).
As it happens, the resolution of this motion will require an analysis of the impact, if any, the pertinent statutory scheme has upon this court’s discretionary power to remove from its calendar previously adjourned cases which merit no further postponements. That is because the prosecution has revived the instant case after it had earlier been dismissed by this court in the exercise of the calendar control function, and because the prosecution took more time to obtain the prosecutor’s information by Grand Jury direction than the 60 days prescribed by the Criminal Procedure Law for bringing this accused to trial on the first accusatory instrument. In Nizza’s view, that dilatoriness entitles him to a dismissal pursuant to statute (CPL 30.30, subd 1, par [c]). For the reasons assigned herein below, that contention is rejected and the motion is denied.
While we deal with the lowest level of criminality, the fact of the matter is that the victim of the automobile accident giving rise to the charge — one Robert Schweitzer — has apparently been disabled for life. Seemingly the critical issue herein is one of identification of the offender, upon which subject the prosecution hopes to offer the testimony of alleged eyewitnesses named William Martinez and Tony Hernandez. But, when these two persons were absent on a fourth date scheduled for a pretrial identification hearing, the presiding jurist dismissed the misdemeanor complaint on the motion of the District Attorney, having first requested and received the prosecutor’s consent to the proposed judicial action. While not now critical, it is interesting to note that, prior to voicing consent "regretfully”, the Assistant District Attorney outlined the efforts he had made to bring Martinez and Hernandez to court that day (i.e., sending a police car to the homes of these men who apparently were working). Had an attempt been made by the prosecutor to have the court find the presence of "exceptional circumstances” within the meaning of the applicable statute (CPL 30.30, subd 4, par [g]), a postponement *76 might well have been granted.[1] Moreover, the prosecution’s time to bring Nizza to trial had not been exhausted at the time of the dismissal.
Be that as it may, the District Attorney subsequently presented this matter to a Grand Jury, which body thereafter directed him to file a prosecutor’s information charging the same offense as had been charged in the misdemeanor complaint. Incidentally, that prosecutor’s information carries both a Grand Jury identification number and the original Criminal Court docket number. Indeed, the second accusatory instrument is physically affixed to the same papers that were before this court at the time the case was dismissed. In any event, the Grand Jury’s action triggered an earlier jurisdictional attack on the prosecutor’s information. At that time, this court denied a motion to dismiss (People v Nizza, 92 Misc 2d 823). More specifically, it was held that the dismissal of the original misdemeanor complaint had been an exercise of the "calendar control” function (i.e., as distinguished from a ruling predicated upon any grounds to be found in the Criminal Procedure Law) — which legally could not operate as a bar to revival of the case (see People v De Rosa, 42 NY2d 872; People ex rel. Hirschberg v Orange County Ct., 271 NY 151, 155; People v Glen, 173 NY 395, 399-400; People v Jayson, 31 AD2d 551; Matter of McDonald v Sobel, 272 App Div 455). Obviously, that determination inspired the present motion.
Prefatorily it may be observed that Nizza is not claiming that his statutory rights were violated by delays occurring while his case was actually calendared in this court.[2] Indeed *77 judicial consideration of defense motions made at various times has occasioned most of the delay herein (CPL 30.30, subd 4, par [a]). Excluding the time when motions were sub judice, and excluding the period between the "dismissal” and the Grand Jury’s action, the amount of delay chargeable to the prosecution falls so far short of the 60-day period allowable here that mathematical computations are unnecessary (CPL 30.30, subd 2, par [c]).
The primary thrust of Nizza’s argument is an assertion that statutory law decrees that the prosecution’s time to bring an accused to trial commences with the filing of the first accusatory instrument (CPL 100.05), and that more than 60 days elapsed between the time of the "dismissal” of the misdemeanor complaint and the filing of the prosecutor’s information. In that connection, it may be observed that, while CPL 30.30 (subd 5, par [d]) deals expressly with felony complaints converted to informations problems by establishing a six months’ rule (see, also, People v Sturgis, 38 NY2d 625; People v Kent, 87 Mise 2d 69), it is silent respecting time frames for the situation involved herein.
Looking for some guidance from the case law, this court has found a decision on each side of the controversy, neither of which is deemed by it to be persuasive.
Favoring Nizza is a decision reflecting an interesting approach to a not totally parallel situation (People v Lupo, 74 Misc 2d 679). In Lupo, the court held that, from inception of the case, the charge should have been a misdemeanor, albeit the prosecution had been initiated by a felony complaint later converted to a prosecutor’s information by virtue of a Grand *78 Jury direction. Despite the "good faith” error by all concerned, the court deemed the already mentioned six months’ rule unavailable to the State, and it then dismissed the case, applying the 90-day rule for a class A misdemeanor and calculating the time period from the day of arraignment on the felony complaint. Such an approach militates against the legislative intendment, at least in this court’s view. Over and above that consideration, efforts to implement that approach in similar situations would embroil judicial tribunals in totally unwarranted speculations about whether the law and facts justified commencements of criminal prosecutions by felony complaints (see People v Kaplowitz, 74 Mise 2d 66). In Lupo, furthermore, the error was patent and readily correctable were it not for oversight on the part of all concerned — a circumstance which induced the court to base its determination on the alternate grounds of the "interests of justice.” Despite these criticisms, however, this court is willing to accept for present purposes the notion that the time periods specified in CPL 30.30 may not be extended because of some "good faith” error by the prosecution.
Turning to the opposing authority previously noted, it does indeed militate against Nizza’s position (People v Vincelli, 91 Misc 2d 635). But the opinion in question — dealing with information filed after an earlier information had been dismissed— does not justify the result reached therein on the basis of statutory provisions.
Turning to the statutes, it is true, as the defendant Nizza argues, that CPL 100.05 — a provision predating 30.30 and addressing itself essentially to concerns under the Statute of Limitations — indicates that, when more than one accusatory instrument is filed in a criminal action, such action commences when the first instrument is filed. But, the Criminal Procedure Law, in effect, qualifies that notion by providing, in its definition of a "criminal action”, that the action "includes the filing of all further accusatory instruments directly derived from the original one” (CPL 1.20, subd 16, par [b]). Put another way, in order to be part of a single criminal action, a second accusatory instrument must void and supersede the initial accusatory instrument by virtue of superior power provided for in law (see People v Schildhaus, 15 Misc 2d 377, 379). As a matter of fact, the law even tolls the Statute of Limitations to permit supersession of an accusatory instrument at judicial behest (CPL 30.10, subd 4, par [b]). In any *79 event, when the prosecutor’s information herein was filed, no earlier accusatory instrument was extant. Thus the present accusatory instrument is not in law a superseding one, its physical affixation to the first accusatory instrument notwithstanding. Accordingly, the time for prosecution for purposes of this motion is measured from the filing of the prosecutor’s information. Thus, the prosecution is not barred (cf. Matter of Forte v Supreme Ct. of State of N. Y., 62 AD2d 704, ns 1, 3). That being so, this court, unlike the court in Lupo, need not concern itself at all with the subject of the prosecutor’s "good faith” in acting as he did in this matter.
On the topic of the future impact of the holding herein, this court has considered the contention by defense counsel, urged on oral argument, that ruling in the prosecution’s favor on the two motions by Nizza would open the door to future prosecutorial abuse in this area of the law. Given such determinations, that advocate foresaw District Attorneys seeking "calendar control” dismissals in order to extend their time for bringing accused persons to trial beyond the allowable statutory periods. Such abuse need not occur.
True, calendar control is a persisent concern in high volume courts such as the Criminal Court of the City of New York. In such a tribunal, the court has a manifest interest in preventing calendars from reaching unmanageable levels. Accordingly, criminal cases frequently need to be dismissed in the exercise of the "calendar control” function where no bases for further postponements appear. Moreover, such dismissals often occur even before the prosecution has exhausted its time under CPL 30.30 for bringing accused persons to trial.
As a practical matter, it is doubtless true that, upon such an occurrence, neither party really believes that any future effort to reinstitute the prosecution will be made, with the result that attention is not paid to the subject of "speedy trial” imperatives. Occasionally, however, a case is thereafter revived. Then a "speedy trial” application is perhaps an inevitability. When such an application is made, as here, each side perceives a resultant abridgement of rights in the event the court were to rule against its position. Given an adverse decision, the prosecution would feel that its time to bring the accused to trial had been shortened; while the defense would feel that the time for prosecution had been extended in violation of the relevant statutory provision.
Needless to say, those are the opposing sentiments now *80 being pressed, upon this court. Indirectly those contentions constrain this court to consider whether its discretion in controlling calendars is limited by the provisions of CPL 30.30 —a question to which case law suggests an affirmative answer (see, e.g., People v Johnson, 49 AD2d 928; People v Potts, 44 AD2d 574; People v Cangiano, 40 AD2d 528). Interestingly, however, neither party now challenges the right of a court to dismiss a case in the exercise of the "calendar control” function; moreover, neither side contends that a court, on its own initiative, must consider CPL 30.30 before clearing its calendar of a seemingly dormant case. As these implied concessions suggest, it is only fair to require that a party to a criminal action assert rights under that section before a presiding jurist is required to determine the extent to which his discretion may be limited by that statutory provision.
Such an approach would seemingly preserve the rights of all concerned. Certainly judicial prerogatives are minimally impacted thereby. The prosecution is free to insist on its full measure of time if so inclined. If the prosecution seeks an advantage by simply remaining silent in the face of a prospective "calendar control” dismissal — or even by consenting, as happened herein — the defense may press a claim under the pertinent section. True, such prosecutorial conduct poses a resultant problem of defense strategy, as it did for Nizza. But, practically speaking, defense acquiesence in a "calendar control” dismissal, while fatal to statutory claims, might lull the prosecution into total inaction or perhaps to the point of violation of pertinent constitutional rights (see People v Singer, 44 NY2d 241, supra; People v Wilson, 8 NY2d 391). Nizza could have chosen not to take the gamble inherent in acquiesence by having simply announced to the court an intention to move for a dismissal pursuant to the relevant section.[3] In short, the defendant Nizza gambled and lost.

. Since a calendar control dismissal is discretionary with the court, the "consent” of the prosecutor had no legal significance. Also because of the nature of the judicial action, the District Attorney seemingly had no right to employ an appeal as a method of reinstituting the prosecution (CPL 450.20; see People ex rel. Jerome v Court of Gen. Sessions, 185 NY 504, 506).

. Despite the absence of a pertinent contentions, both parties challenge various indorsements on the court papers — indorsements reflecting, in substance, whether the statute is to be considered tolled for particular periods. But the minutes of all the pertinent proceedings have not been supplied on this motion. Manifestly, in a given case, such minutes would be crucial to any effort to rebut the presumption of regularity. On that score, the indorsements and transcript of the proceedings might well be dispositive; if not, the court would be positioned to order a hearing. In any event, as in this case here, an attempt at rebuttal may not rest simply upon an attorney’s own recollection or notes made at the time in question.
In a similar vein, it may not now be amiss to comment that minutes are also required on a motion of this type when the court papers fail to carry an indorsement indicating who is chargeable with a particular adjournment.
Omissions of that sort have occurred too frequently and resultant problems on *77 "speedy trial” motions have been inevitable. In view of the applicable statutory provisions, however, both the State and the accused have interests to be served in the determination as to which side is chargeable with a particular delay — a concern intensified when dealing with the relative short periods of time involved in bringing offenses less than felonies to trial.
Accordingly, counsel is reminded to insist upon indorsements from the time a case comes into the system initially. True, the decision to charge one side or the other with a delay may not always be clear-cut, as when the law has not been finally settled vis-á-vis a given type of delay (e.g., a delay in responding within the statutory period to an order of discovery or a delay by the District Attorney’s office in typing Grand Jury minutes (see People v Bonterre, 87 Misc 2d 243; People v Saunders, 84 Misc 2d 467). However, in such situations, the indorsement ideally should reflect the underlying problem and the judicial ruling thereupon, unless the court reserves a ruling until a formal motion is filed. Hopefully, this reminder will help to obviate some of the difficulties faced by the courts in dealing with "speedy trial” motions.

. Indeed, such claims may be urged without seriously impinging upon the court’s right to control its own calendar. That is to say, an "off calendar” procedure could be employed — a mechanism similar to the one now used for adjournments in contemplation of dismissal (CPL 170.55).
For example, when a case has been calendared several times and the prosecution is unable to demonstrate "exceptional circumstances” warranting further postponement, the case could be "marked off” the calendar at the request of either party until the last day for prosecution under CPL 30.30 is reached. Where the parties are able to stipulate as to that date, the court papers presumably could constitute the functional equivalent of motion papers (CPL 255.20). In the interim period, the prosecution *81 would be free to have the case restored to the calendar (see People v De Rosa, 42 NY2d 872, supra). If no such application is made, the case would be automatically dismissed pursuant to the section under discussion. Then, the prosecution could not be reinstituted absent an appropriate order by an appellate court (CPL 450.20, subd 1).