Thomas Russell Jones, J.
The petitioners [defendants] were arrested on March 23, 1972 and have been held prisoner in the Brooklyn House of Detention since that date because they lacked $15,000 in cash bail or sufficient credit to buy their freedom. Each prisoner moves to dismiss the felony indictment filed against him on the ground that his constitutional and statutory right to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution, has been violated by the unwarranted nine-month delay in prosecution. The defendants also assert that their long imprisonment without trial violates the letter and spirit of CPL 30.30 and 210.20.
*991 In response to the motion, the District Attorney merely states that he has not moved this case for trial because of “ heavy calendar congestion ”; that he has determined to prosecute “ older cases first”, in order of indictment numbers; and that he is now “ ready for trial ”. The prosecutor acknowledges that his announced “readiness” for trial actually means that these defendants will not be tried for another six months, and then only after earlier indictments have been disposed of.
Such reasons do not satisfy the commandment of the Sixth Amendment to the United States Constitution[1] which guarantees a criminal defendant the right to a speedy trial. Jailing an impoverished defendant for nine months without a trial violates the spirit and purpose of CPL 30.10 et seq.
There has been presumptive prejudice to the rights of these defendants. The defendants’ rights to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution, have been violated and they have been denied their due process rights under the Fourteenth Amendment (cf. Klopfer v. North Carolina, 386 U. S. 213 and Dickey v. Florida, 398 U. S. 30). The indictment is dismissed and defendants discharged from custody.
The written records of the case disclose that the following proceedings were held in the Criminal Court and the Supreme Court since defendants’ arrest on March 23, 1972:
DATE DISPOSITION March 23, 1972 March 29, 1972 May 3, 1972 May 10, 1972 May 25, 1972 August 14, 1972 August 28, 1972 September 19, 1972 Defendants arraigned; bail fixed $25,-000. Hearing in Criminal Court. Indictment filed in Supreme Court. Bail $15,000 fixed in Supreme Court; defendants remanded to prison. Case “Off Calendar” in Part I-AA Supreme Court. Case adjourned to August 28; defendants’ “ counsel did not appear ”. Case adjourned to September 19 at defendants’ request. Defendants move for their release for failure to prosecute.
*992 DATE DISPOSITION September 21, 1972 September 22, 1972 October 13, 1972 October 24, 1972 Defendants not produced by Clerk of court or Department of Correction; adjourned to September 22, 1972. Defendants’ attorney not present; adjourned to October 13. Case marked “ready and passed ” by District Attorney. Case marked “ ready and passed ” by District Attorney; adjourned to November 10, 1972 by prosecution.
The United States Supreme Court and the New York State Court of Appeals have repeatedly reminded all law enforcement agencies of this State that the Sixth Amendment to the Constitution is not an idle statement of our laws. This provision which mandates a speedy trial for citizens accused of crime was not rhetorical in the .sense that the phrase “ pursuit of happiness ” was used. The court in Dickey v. Florida (398 U. S. 30, 37, supra) said: “ The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. * * * Stale claims have never been favored by the law, and far less so in criminal cases.”
From time immemorial, even before Magna Carta, unreasonable delay in the determination of criminal actions has been denounced as official oppression, and as a disgrace to the administration of justice (People v. Solomon, 296 N. Y. 85, 87; People ex rel. Hammond v. Warden, 35 A D 2d 520, 521). Long delay in the prosecution of criminal charges approaches tyranny. As the weeks and months pass, the legal rights of the accused as well as the prosecution’s case are undermined. In the eyes of the people, unwarranted delay in prosecuting crime discredits the 'justice and fairness of the criminal law (People v. Minicone, 28 N Y 2d 279, 281; People v. Boyd, 37 A D 2d 582, 583). Perhaps the most pernicious consequence of unexplained delay to speedily bring an accused defendant to trial is that criminals and would-be offenders become bolder in attacking their victims and society, especially when free on bail.
The social and legal imperatives for a speedy trial were succinctly set forth, in Matter of Watts v. Supreme Ct. (36 A D 2d 17, 19 [3d Dept., Feb., 1971]): “ The purposes of the guarantee are threefold: it protects the accused, if held *993 in jail to await trial, against prolonged imprisonment; it relieves the accused of the anxiety and public suspicion upon him; and it prevents him from being exposed to the hazard of a trial after so great a lapse of time, thereby helping, for example, to prevent against the loss of witnesses or the dulling of memory (People ex rel. La Belle v. Harriman, 35 A D 2d 13, 14; People v. Prosser, 309 N. Y. 353, 356).” In People v. Prosser (309 N. Y. 353, 358), the New York Court of Appeals announced that the prosecutor cannot slough off his own responsibility to promptly try a citizen whom he has imprisoned and charged with a crime. The court said: “It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial.”
With such awesome power over men’s lives and freedom at his disposal, a District Attorney may not, must not, be permitted to postpone his obligation to an accused and to society by simply saying that “he has too much work to do.”! This court is shocked by the prosecutor’s latest affirmation that his own “ 10-month delay in (bringing the accused to) trial cannot be considered a violation of due process or denial of Sixth Amendment protections ’ ’.
More than two years ago, i.e., in January, 1971, the New York Court of Appeals warned the executive branch of government in People v. Ganci (27 N Y 2d 418, 423) that “ calendar congestion ” would no longer be considered a legal excuse for depriving a defendant of a speedy trial, saying: ‘ ‘ But the failure of the State and local governments to provide services and facilities rapidly enough to keep apace with the volume of crime is not a categorically complete answer to the need for prompt trial and practical means must be found in the legal system to minimize undue delay in trial.” The 16 months during which the defendant in Ganci (supra, p. 422) remained in prison awaiting trial was not “ attributable] to the prosecutor ”, who was found by the court to be “ steadily ready for trial”. It is not so in this case.
Chief Judge Fuld, dissenting in Ganci (supra, p. 430), then emphasized that the State could not offer its own neglect and parsimony as an excuse for delaying the prosecution of a citizen accused of crime. He declared (p. 431) that “ it is the responsibility of the State, or its subdivisions, to do what is necessary — by furnishing funds, facilities and personnel -to assure the effective operation of the judicial system, and that burden may not be shifted to the defendant.”
*994 Calendar congestion and calendar delays are not of a defendant’s making. A citizen’s constitutional right to a speedy trial may not be suspended upon such imponderable circumstances beyond his control. In Barker v. Wingo (407 U. S. 514 [1972]), Mr. Justice White insisted that the government will not be permitted to delay the prosecution of criminal cases and excuse itself by simply pleading that its calendars are overcrowded, in the following terms (p. 538): “ Unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that public resources provided by the State’s criminal-justice system are limited and that each case must await its turn.”
In a serious but essentially “ run-of-the-mill criminal case ” such as this, the sovereign State, with its might and power, must do better. The Trial Justice has the power and the responsibility to act in such circumstances.
Whether there has been undue delay between indictment and trial is a matter for discretion of the trial court upon consideration of all the circumstances of the particular case (People v. Alfonso, 6 N Y 2d 225, 229; People v. Abbatiello, 30 A D 2d 11, 15; People v. Reynolds, 39 A D 2d 812, 813; People v. Sylvester, 50 Misc 2d 677).
The court does not reach the question whether CPU 30.30 applies to this case, having determined, at the threshold, that the defendant’s Sixth Arhendment rights to a speedy and public trial have been violated. Note must be taken, however, that CPU 30.30: “ appl[ies] to criminal actions commenced on or after the first day of May, 1972”. One of the principal evils which the new law sought to remedy was to prevent ■impoverished defendants from: “languishing in overcrowded jails for months without trial, while frustrations build and the potential for jail disturbances increases. ”[2],[3]
A .statute which was specifically designed to enforce the speedy-trial mandate of the United States Constitution and to prevent the money bail system from making one law for the poor and another for the rich should not be so interpreted as to miss its .stated aims.
Accordingly, the defendants’ motion is granted.

. U. S. Const., 6th Amdt.: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial”.

. Governor Nelson A. Rockefeller’s Annual Message to the New York State Legislature, January 18,1972.

. As of December 8, 1972 there were more than 600 defendants in pretrial detention for six months or longer and 300 for a year. (Report of Special Committee on Administration of Criminal Justice, New York State Bar Association, N. Y. L. J-., Jan. 29, 1973, p. 1, col. 3.)